**Victor COLON, Petitioner-Appellant,**

v.

**Walter FOGG, Superintendent, Greenhaven Correctional Facility, Respondent-Appellee.**

**No. 1072, Docket 79–2036.**

United States Court of Appeals, Second Circuit.

Argued May 23, 1979.

Decided Aug. 1, 1979.

David J. Gottlieb, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City), for petitioner-appellant.

Charles A. Bradley, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, George D. Zuckerman, Asst. Sol. Gen., State of New York, New York City, of counsel), for respondent-appellee.

Before LUMBARD, MANSFIELD and GURFEIN, Circuit Judges.

MANSFIELD, Circuit Judge:

Victor Colon appeals from a judgment of the United States District Court for the Southern District of New York entered on February 23, 1979, after an evidentiary hearing before Gerard L. Goettel, *Judge*, dismissing Colon's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Appellant's sole claim on appeal is that he was denied effective assistance of counsel at his state trial because he and his co-defendant were jointly represented by the same counsel. We agree and reverse.

Colon and his co-defendant, Mariano Salomon, were convicted in June, 1974, in New York state court after a jury trial for possession and sale of cocaine. The evidence at trial consisted primarily of the testimony of

an undercover police officer. The officer had arranged for the purchase of the cocaine in a series of telephone calls to appellant Colon, some of which were recorded and the tapes admitted into evidence at trial. Colon and the officer then met in a Bronx hardware store and waited for the arrival of Salomon, who eventually appeared carrying a bag containing cocaine. Salomon set the bag down and announced "I have nothing to do with this deal." The officer checked the powder to be sure it was cocaine and weighed it in the hardware store. Then the officer suggested that Colon accompany him to his car to get the money, which Colon did. Colon was arrested after the two men had left the store; Salomon was subsequently arrested in the hardware store.

' At trial, both Salomon and Colon were represented by the same retained attorney, who was being paid solely by Salomon. Neither defendant called any witnesses, and defense counsel waived an opening statement. Through cross-examination of the State's witnesses and summation to the jury, defense counsel urged that Colon was acting solely as an agent of the buyer, which under New York law is a valid defense to a charge of the illegal sale of narcotics. See *People v. Roche*, 45 N.Y.2d 78, 407 N.Y.S.2d 682, 379 N.E.2d 208 (1978); *People v. Chong*, 45 N.Y.2d 64, 407 N.Y.S.2d 674, 379 N.E.2d 200 (1978); *People v. Lindsey*, 16 A.D.2d 805, 228 N.Y.S.2d 427 (2d Dept. 1962), aff'd., 12 N.Y.2d 958, 238 N.Y.S.2d 956, 189 N.E.2d 492 (1963). The defense theory urged on behalf of Salomon was that he was merely an innocent bystander.

The jury found both defendants guilty. Both convictions were affirmed by the Appellate Division without opinion, *People v. Salomon*, 50 A.D.2d 1103, 377 N.Y.S.2d 347 (1st Dept. 1975); *People v. Colon*, 51 A.D.2d 1104, 381 N.Y.S.2d 570 (1st Dept. 1965), and both defendants were denied leave to appeal to the New York Court of Appeals.

In early 1976 Salomon filed his pro se petition for a writ of habeas corpus, in the District Court for the Southern District of New York, raising a Sixth Amendment claim along with other issues. In July 1976 his petition was denied, without an evidentiary hearing, by Judge Pollack of that court, who found that Salomon had failed to show any prejudice from the joint representation. Salomon then petitioned this court for a certificate of probable cause under 28 U.S.C. § 2253, for leave to proceed in *forma pauperis* on appeal, and for appointment of counsel. In March, 1977, we vacated the judgment of the district court and remanded for consideration of the question of waiver. The district court then appointed counsel for Salomon and held an evidentiary hearing. Judge Pollack again denied the petition for a writ of habeas corpus, finding that Salomon had failed to demonstrate that the joint representation was "conducive to or created or resulted in any conflict of interest or prejudice." *Salomon v. LaVallee*, 575 F.2d 1051, 1053 (2d Cir. 1978) (quoting from the finding of the district court). The issue of waiver was not reached. On appeal this court held that there was not a sufficient inquiry at the state trial into the joint representation issue and therefore remanded for "a reconsideration of the issue of prejudice, with the burden this time on the state to show its absence and not . . . on [Salomon] to demonstrate its existence." *Salomon v. LaVallee, supra*, 575 F.2d at 1055.

Appellant Colon filed his pro se petition for a writ of habeas corpus in October, 1976, while Salomon's first appeal to this court was still pending.[1] Colon did not expressly assert a claim that the joint representation had denied him effective assistance of counsel. Judge Goettel appointed counsel for Colon, and on August 5, 1977, with the State's express consent, an amended peti-

1. The State permitted three successive deadlines to pass without filing an answer to the original petition for a writ of habeas corpus. On February 3, 1977, Judge Goettel found the respondent to be in default and directed the clerk of the court to issue the writ of habeas corpus. The State moved to vacate its default in February, 1977, and the motion was granted in April, 1977.

tion on behalf of Colon was filed clearly asserting the claim now before us on appeal. Judge Goettel held Colon's amended petition in abeyance since at that time Salomon's second appeal to this court was pending. Following our second remand, the Salomon and Colon petitions were joined for an evidentiary hearing before Judge Goettel.

At the evidentiary hearing, the State called former Assistant District Attorney Scotto (the prosecutor at the original trial), A. Matthew Broughton (an associate of the defense counsel at trial), Colon and Salomon. In addition, the State submitted an affidavit from the state trial judge, transcripts of the pre-trial proceedings in the state court, and the testimony of the defense counsel as given at the initial evidentiary hearing held before Judge Pollack on Salomon's petition. The State argued that Colon and Salomon had waived the joint representation claim prior to trial and that there had been no prejudice to either petitioner from the joint representation. After the evidentiary hearing had concluded, in October 1978 the State moved to dismiss Colon's petition for failure to exhaust state remedies on the claim of ineffective assistance of counsel.

Judge Goettel denied the State's motion to dismiss, which he noted was made "somewhat incredibly after over two years of reluctant litigation." Colon had not explicitly raised the ineffective assistance of counsel claim in his state appeal, although he had challenged his joint trial on constitutional grounds. However, co-defendant Salomon, whose state appeal had been decided first, had explicitly raised the joint representation issue in his state appeal, and the Appellate Division had affirmed his conviction without opinion. Judge Goettel concluded that "there is no reason to expect that the state courts would have altered their view of the case for Colon's benefit." In addition, Judge Goettel found that "the State's extensive delay in asserting the exhaustion ground would itself be sufficient to support a discretionary decision not to dismiss on that ground." Judge Goettel concluded that in light of the State's prior consent to the amendment of Colon's petition to assert the ineffective assistance of counsel claim, "the State's motion must be considered close to frivolous."

On the issue of waiver, Judge Goettel noted that this court had already held in *Salomon v. LaVallee, supra,* 575 F.2d at 1055, that there had been no inquiry by the state trial judge of Salomon himself on the issue of joint representation or on the risk of a conflict of interest, and that this represented the law of the case as to Salomon. "[B]ased on the evidence presented in this proceeding," Judge Goettel found that there was not a showing "that each of the petitioners was advised explicitly of the inherent potential for conflict and of the possibility that separate counsel could be appointed, or that they, with this knowledge, willingly consented to be jointly represented." The burden was therefore on the State to show a lack of prejudice from the joint representation. Judge Goettel concluded that the State had met that burden and that there was no "real, specific or material prejudice" from the joint representation. Colon and Salomon have separately appealed. Only Colon's appeal is before this court at the present time.[2]

## DISCUSSION

■ We agree with the district court that appellee's motion to dismiss Colon's petition for failure to exhaust state remedies, an argument also pressed before this court, is "close to frivolous." The summary rejection of co-defendant Salomon's identical ineffective assistance of counsel claim by the Appellate Division prior to Colon's state appeal demonstrates that it would have been futile for Colon to have raised the claim on his direct appeal, which relieved him of the necessity of pursuing state remedies. *Stubbs v. Smith,* 533 F.2d 64, 68–69 (2d Cir. 1976). In addition, the State consented to the amendment of the petition to add a claim of ineffective assist-

---

2. Salomon's appeal has not yet been scheduled, pending appointment of new counsel on appeal.

ance of counsel and did not raise the exhaustion issue until after the evidentiary hearing and some fourteen months after the amendment of the petition. *Cf. United States ex rel. Graham v. Mancusi*, 457 F.2d 463, 467–68 (2d Cir. 1972).

■ Judge Goettel's finding that Colon and Salomon were not explicitly and directly advised by the state trial judge of the inherent potential for conflict in joint representation and of the possibility of appointment of separate counsel, and that therefore neither defendant knowingly consented to joint representation, is adequately supported by the record. Although it appears that the state trial judge did discuss the possibility of a conflict of interest in the joint representation with an associate of defense counsel, there was conflicting evidence on whether the potential hazards were ever discussed with Colon and Salomon personally. Judge Goettel's resolution of that conflicting testimony after seeing and hearing the witnesses is not clearly erroneous. See also *Salomon v. LaVallee, supra*, 575 F.2d at 1055.

■■ In order to assure a jointly-represented defendant of the effective assistance of counsel guaranteed by the Sixth Amendment a trial judge must explore with him personally the inherent potential for a conflict of interest in the joint representation. *Salomon v. LaVallee, supra*, 575 F.2d at 1054; *United States v. Carrigan*, 543 F.2d 1053, 1055 (2d Cir. 1976); *United States v. Mari*, 526 F.2d 117, 119 (2d Cir. 1975), *cert. denied*, 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976); *United States v. DeBerry*, 487 F.2d 448, 453 (2d Cir. 1973); *People v. Gomberg*, 38 N.Y.2d 307, 313–14, 379 N.Y.S.2d 769, 775, 342 N.E.2d 550, 554 (1975). See also *Glasser v. United States*, 315 U.S. 60, 71, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Kaplan v. Bombard*, 573 F.2d 708, 716 (2d Cir.) (Mansfield, J., concurring). *Cf. United States v. Alberti*, 470 F.2d 878, 881–82 (2d Cir. 1972) (defense counsel had earlier represented one of the Government's

witnesses in connection with a guilty plea to the same crime), *cert. denied*, 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973). Such an inquiry is usually the only practical method of ascertaining whether the joint representation may prejudice the defendant and, if so, whether he nevertheless desires to make an informed waiver of his right to independent representation. For these reasons we have held that in the absence of such an inquiry the burden shifts to the State to prove that the petitioners were not prejudiced by the joint representation. *Kaplan v. Bombard, supra*, 573 F.2d at 714 n.7 (2d Cir. 1978); *United States v. Carrigan, supra*, 543 F.2d at 1056; *United States v. DeBerry, supra*, 487 F.2d at 453 n.6. See also *Salomon v. LaVallee, supra*, 575 F.2d at 1055–56 (Mansfield, J., concurring in part and dissenting in part) (by implication). If the defendant's Sixth Amendment right is to be effective, such a course is dictated as a corollary of his constitutional right.

■ The State has failed completely to sustain its burden in this case. Colon's claim is not based upon a speculative, hypothetical or far-fetched strategy that might have been adopted by separate counsel without any possible chance of success in the face of overwhelming proof, see e. g., *United States v. DeFillipo*, 590 F.2d 1228, 1237–38 (2d Cir. 1979); *Smith v. Regan*, 583 F.2d 72 (2d Cir. 1978). Instead this is a case "where joint counsel was placed in the dilemma of having either to pursue or abandon a defense or tactic that would help one defendant but hurt the other," *Smith v. Regan, supra*, 583 F.2d at 77, citing *Glasser v. United States, supra*, and *United States v. Carrigan, supra*.

The conflict of interest was quite specific arising out of the presentation of plainly conflicting defenses. The defense theory urged at the trial for Colon was that he was the agent of the buyer;[3] the defense urged for Salomon was that he was an innocent bystander. For counsel to press Colon's argument vigorously it would be necessary

---

3. Under N.Y. law only the seller and those acting for him may be convicted of unlawfully selling narcotics. See *People v. Lindsey*, 16

A.D.2d 805, 228 N.Y.S.2d 427 (2d Dept. 1962), *aff'd.*, 12 N.Y.2d 958, 238 N.Y.S.2d 956, 189 N.E.2d 492 (1963).

to portray Salomon as the seller or at least the representative of the seller, but that would plainly conflict with Salomon's contention that he was an innocent bystander. On the other hand, a vigorous presentation of Salomon as an innocent bystander would have required emphasis on Salomon's limited participation, which would necessarily have accented Colon's participation as the likely seller; in fact, in summation defense counsel did draw the jury's attention to the fact that it was Colon, not Salomon, who accompanied the agent to his car to get the money. In addition, if Salomon was an innocent bystander, the only person left at the scene of the crime to represent the seller was Colon; such an assertion is in direct conflict with Colon's defense theory.

▬▬ Colon was entitled to "zealous and independent counsel." *United States v. Carrigan, supra,* 543 F.2d at 1057. As we have noted before, "[t]rial counsel could not *possibly* have given his full measure of professional devotion to clients presenting inconsistent defenses." *Id.* (emphasis supplied). See also *Holloway v. Arkansas,* 435 U.S. 475, 489–90, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978) ("Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing."); *Salomon v. LaVallee, supra,* 575 F.2d at 1056 (Mansfield, J., concurring in part and dissenting in part). Counsel representing Salomon and in fact being paid solely by Salomon could not assure Colon of the substantial right to full and vigorous

representation without violating his duty to Salomon.[4] Such a fundamental conflict in defense strategies actually used at trial constitutes a sufficient showing of "some specific instance of prejudice, some real conflict of interest, resulting from a joint representation," *United States v. Carrigan, supra,* 543 F.2d at 1055, quoted in *Kaplan v. Bombard, supra,* 573 F.2d at 712 and *Salomon v. LaVallee, supra,* 575 F.2d at 1054, regardless of whether a jury might have reached the same result if each defendant had been separately represented. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States, supra,* 315 U.S. at 76, 62 S.Ct. at 467, quoted in *Holloway v. Arkansas, supra,* 435 U.S. at 488, 98 S.Ct. 1173. Colon was therefore denied his Sixth Amendment right to the undivided loyalty of his counsel and uninhibited representation at trial.[5]

Accordingly, we reverse the judgment below and remand to the district court for entry of an order to the effect that Colon be released from custody pursuant to a writ of habeas corpus unless he is retried by the State within a reasonable period of time.

---

4. The district court acknowledged that "viewed from an overall perspective, joint counsel was identifiably compromised in arguing these inconsistent factual positions to the jury." That defense counsel attempted to take a "middle" road, raising both defense theories but not pressing either to its logical extent, is demonstrated by Judge Goettel's remark that the " 'possible prejudice' from the theoretically conflicting factual positions now purportedly seen in trial counsel's tactics *were not stressed or even articulated well.*" (emphasis supplied).

5. In addition, defense counsel testified at the evidentiary hearing before Judge Pollack that Colon had wished to plead guilty but Salomon had wanted to go to trial. Here, too, Colon was specifically prejudiced by the joint representation. Although the defense counsel testified at

the hearing before Judge Pollack that the State was unwilling to accept a guilty plea from only one defendant, this was not a case like *Smith v. Regan, supra,* 583 F.2d at 76, where "the prosecutor had an iron-clad case against both defendants, with four witnesses who could (and did) positively identify [both defendants], prior acquaintances, as the robbers" so that "there was no reason for the State, once it was required to try its case against one defendant not to go on trial against both." Separate counsel for Colon might well have been able to bargain for a guilty plea to a lesser offense in exchange for Colon's testimony against Salomon at trial; obviously joint counsel could not even make such an offer without violating his duty to Salomon.