**STATE OF FLORIDA v CHAMBLEE**

Case No. 89-25502 CF

Seventeenth Judicial Circuit, Broward County

September 14, 1990

### APPEARANCES OF COUNSEL

Mark C. Burton, Esquire, for plaintiff.

Kayo E. Morgan, Esquire, for defendant.

### OPINION OF THE COURT

MEL GROSSMAN, Circuit Judge.

*ORDER ON STATE'S MOTION TO DISQUALIFY DEFENSE COUNSEL*

THIS CAUSE having come before this Court upon the State's Motion to Disqualify Defense Counsel, and the Court having considered same and being fully advised in the premises makes the following determinations of facts and conclusions of law: *FINDINGS OF FACT*

1. On December 1, 1989, defendant PATRICIA LYNN CHAMBLEE and a Co-Defendant, ROBERT LANUM, were arrested and charged by information with trafficking in cocaine and possession of cocaine.

2. Defendant counsel, Kayo Morgan, entered an appearance on behalf of both PATRICIA CHAMBLEE and ROBERT LANUM.

3. While out on bond for the original charges, the Defendant and Co-Defendant were again arrested for conspiracy to traffic cocaine.

4. During the course of her second arrest, defendant, PATRICIA CHAMBLEE, in a taped statement indicated she had no knowledge that the Co-Defendant was going to pick up and deliver cocaine until after those actions had begun. Additionally, she indicated that with regards to the original arrest, she had no possessory interest in the contraband found at Mr. Lanum's apartment.

5. Defendant, CHAMBLEE, has been charged, following that second arrest, with an additional charge of possession of cocaine. Co-Defendant, LANUM, has not yet been charged in that subsequent case, as there is (according to the State) no direct evidence at present to link him to the cocaine transaction.

6. The State has voiced its intention to enter into plea negotiations with the Defendant seeking to elicit testimony from her in reference to the original trafficking charge, as well as testimony relating to the second arrest. This plea negotiation would allow the Defendant to achieve a more favorable disposition than the three year minimum mandatory sentence she would face if convicted of the charges against her.

7. Defense counsel argues that since no plea offer has yet been officially made, there is no actual conflict at this juncture. Additionally, the Defendant testified that she desires to be represented by defense attorney Kayo Morgan. However, she did not appear to fully comprehend the nature of consequences of any conflict.

## CONCLUSIONS OF LAW

1. The Sixth Amendment right to counsel of the United States Constitution and Article I Section 16 of the Florida Constitution carries with it the right to assistance of counsel whose loyalty is not divided between clients with conflicting interests. *Davis v State,* 461 So.2d 291 (Fla. 1st DCA 1985) *Glasser v United States,* 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed 680 (1942). Representation of co-defendants does not in and of itself violate the constitutional guarantee unless it also gives rise to a conflict of interest. *Davis* at 294.

2. A trial court is under a duty to make inquiry when the possibility of a conflict of interest is "brought home" to it. *Holloway v Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In the case at bar, there are two instances of potential conflict: 1) the Defendant CHAMBLEE may wish to accept a plea bargain with the state in exchange for testimony against Co-Defendant, LANUM, or 2) the Defendant's

**217**

testimony at her trial or at the Co-Defendant's trial, if any is given, may inculpate the Co-Defendant. Both of these potential situations seriously and detrimentally limit the ability of defense counsel to properly advise each of his clients and would render any cross-examination of a client-turned-witness virtually impossible.

3. Defense counsel correctly contends that the mere speculation of conflict or any hypothetical conflict which may be proposed by the State is insufficient to render a disqualification under the circumstances.

In the case before us, the State has indicated that it will pursue plea negotiations with the Defendant. In fact, the Defendant, CHAMBLEE, has made tape-recorded statements which would lead a reasonable person to believe that she may very well testify, through one avenue or another, in a manner which would at least be inconsistent with the best interests of Co-Defendant LANUM. The conflict in the present case is, therefore, more than mere speculation.

4. The Supreme Court in the case of *Wheat v U.S.* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) granted trial courts broad latitude in making decisions as to disqualification of counsel based on the court's instinct and past experience of potential conflict. In that case, the Court noted that a trial court needs to consider any alleged government attempt to manufacture conflict in an effort to disqualify able defense counsel. It also noted that:

> Unfortunately for all concerned, a district court must pass on the issue of whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of ascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, must less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few fits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants.

*Wheat* 108 S.Ct. at 1699.

5. This Court is not unaware of the Defendant's Sixth Amendment Right to counsel which presumes counsel of her choice. However, these constitutional rights must be balanced with the Court's institutional interest in the rendition of just verdicts and ". . . in ensuring that criminal trials are conducted within the ethical standards of the

218

profession and that legal proceedings appear fair to all who observe them." *Wheat v U.S.,* 108 S.Ct. 1692 at 1697 (1988). The appearance of impropriety, in and of itself, will not provide a sufficient reason to disqualify an attorney. *Endress v Coe,* 433 SO.2d 1280 (Fla. 2d DCA 1983). Even when, as in the case at bar, it appears that defense counsel by virtue of his previous or simultaneous commitments may have to compromise his ability to proceed in a case, the appearance of conflict may nonetheless be waived by the client. *Coffey v Pack,* 524 So.2d 498 (Fla. 2d DCA 1988). This waiver, however, must be a knowing one, and it is incumbent that the Defendant fully appreciates the potential adverse consequences of continued joint representation. *DeArce v State,* 405 SO.2d 283 (Fla. 1st DCA 1981).

6. Although, in the present case, Defendant has stated under oath that she wishes to retain her present defense counsel, this Court finds that the waiver was not a knowing one. The Defendant appeared unsure of the meaning and effect of conflict as it affected her. In *Davis v State,* 461 So.2d 291 (Fla. 1st DCA 1985) the First District found that the driver of a vehicle from which marijuana and cocaine were seized could not have waived his attorney's conflicting loyalties arising from representation of both the driver and the passenger. In that case, the driver testified at the passenger's motion for severance that the driver had signed an affidavit stating he would testify at the passenger's trial that the marijuana and cocaine were under his sole control and that the passenger did not know the drugs were present. The Court held that there had been no valid waiver, even though the driver stated that he understood the affidavit could be used against him in his upcoming trial.

> There can be little doubt that Davis' defense counsel encountered a serious conflict of interest in attempting to represent both defendants. And it is equally clear that, instead of seeking to withdraw as counsel, he forged ahead and actively represented the competing interests of his clients which actually affected the adequacy of his representation of Davis. We can hardly imagine a more obvious example of the sacrifice of the interest of one client for the enhancement of the interests of the other.

*Davis* at 294-295.

The fact in the case at bar are strikingly similar to the *Davis* situation. If either defendant were to testify, the Court and defense counsel would be faced with the same scenario. As such, Defendant's desire to waive any conflict is ineffective in the present situation.

7. The moment Defendant CHAMBLEE wishes to testify on her

**219**

own behalf in a manner which could be detrimental to the Co-Defendant, their interests diverge and become diametrically opposite. Florida Bar Rule of Professional Conduct Rule 4-1.7 states in pertinent part:

(b) A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest, unless:

(1) The lawyer reasonably believes the representation will not be adversely affected and

(2) The client consents after consultation.

The Comment to that Rule states, "The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one co-defendant." Since this court does not have a crystal ball or any intrinsic ability to predict the future, it can never foresee with confidence that an actual conflict may occur. However, neither the Defendant nor the Co-Defendant should be made to suffer any potential ineffective assistance of counsel due to a lack of talismanic abilities. Given the defendant's statements at the time of her arrests, there is great potential for incompatibility between the Defendant and her Co-Defendant in relation to the State.

8. In sum, while this trial court recognizes that the 6th Amendment right to counsel carries a presumption in favor of a defendant's choice of counsel, the demonstration of a serious potential for conflict will suffice to overcome that presumption.

For the above stated reasons, this Court holds that Defense Counsel should be disqualified from representing Defendant CHAMBLEE as long as his representation of the Co-Defendant LANUM continues. The Court finds that there has been a substantial demonstration of serious potential conflict in the dual representation of the Defendant and Co-Defendant in the above-styled case.

The question of whether Mr. Morgan can appropriately represent the Co-Defendant has not been raised, nor is it reached at this time. However, this Order does not preclude the Court from addressing that matter in the future.

WHEREFORE it is ORDERED AND ADJUDGED that the State's Motion for Disqualification of Defense Counsel is GRANTED.

DONE AND ORDERED in Chambers, at the Broward County Courthouse, 201 Southeast Sixth Street, Fort Lauderdale, Florida 33301, this 14th day of September, 1990.